INTERNATIONAL HARVESTER CO. v. RICHARDSON MFG. CO.

(Circuit Court, D. Massachusetts. August 19, 1909.)

No. 375.

PATENTS (§ 328*)—INFRINGEMENT—MANURE SPREADER.

The Kemp patent, No. 632,124, for an improvement in manure spreaders, consisting of a tailboard placed immediately in front of the beater to prevent it from becoming clogged in loading, means for raising and lowering the same, and a stop device to prevent the wagon bottom and beater from being operated until the tailboard is raised, discloses invention in such means of operation and stop device, but is limited by the prior art to the precise construction shown, with a narrow range of equivalents. As so narrowly construed, it is not infringed by the device of the Brown patents, Nos. 731,539 and 821,779.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Banning & Banning and Thomas A. Banning, for complainant.

Fish, Richardson, Herrick & Neave and Guy Cunningham, for defendant.

COLT, Circuit Judge. This is a suit for infringement of letters patent No. 632,124, issued August 29, 1899, to Joseph S. Kemp for improvements in manure spreaders. The principal improvement covered by the patent and the only one involved in the present case, relates to a tailboard which is incorporated in the machine for the purpose of "preventing the beater from becoming clogged in loading."

A manure spreader is a wagon much like the ordinary farm wagon, with a movable bottom and a beater or rotatable cylinder with projecting teeth located at the end of the wagon. By the slow rearward movement of the bottom the manure is brought against the rapidly rotating beater and scattered upon the field. The rear wagon wheels give the driving power for the bottom and the beater, and these parts are operated by a lever in front of the wagon. By moving the lever the driver can engage or disengage the connecting gears or clutch mechanism, and thereby set the bottom and beater in operation or cause them to remain stationary.

Kemp took out several prior patents for improvements in manure spreaders, and the patent in suit is for the addition of this tailboard and operating mechanism to the prior Kemp machine.

A perspective view of the Kemp manure spreader with this tailboard addition is illustrated in the following cut:

This board, as shown in the cut, is located at the end of the wagon box directly in front of the beater. Its purpose is to prevent the manure from clogging the beater in loading and transportation to the field; and it accomplishes this purpose by confining or holding back the manure in the wagon box until just before the spreading operation begins. The board is lowered into the wagon box before loading, and is raised bodily and vertically out of the box before starting the machine. This is accomplished by means of the long pivoted arms and connecting mechanism. The board is operated from the driver's seat by a separate lever. This lever is provided with a stop device in the form of a laterally projecting pin, which prevents the raising of the beater and movable bottom lever before the board lever has been raised. In other words, this stop device prevents the machine from starting until the board has been raised. It appears that a similar tailboard was occasionally inserted in the earlier Kemp spreader. This board, however, was a hand board. It was lowered into the box by hand, and was raised out of the box by hand, or by means of a lever. In the machine of the patent in suit Kemp embodied the means he conceived for raising and lowering the board and the stop device for preventing the machine from starting until the board had been raised.

The claims in issue are 1, 2, 3, 5, 6, 7, and 8. Claims 1, 2, and 3 are for combinations of the principal features of the prior manure spreader with the tailboard and the whole or parts of the mechanism for operating the board; while claims 5, 6, 7, and 8 are for combinations of the principal features of the prior manure spreader with the tailboard and a stop device which prevents the machine from starting before the board has been raised.

The Kemp board has proved to be useful. Its use is advantageous where the manure is heavy and soggy. It has not, however, supplanted the old way of preventing the manure from clogging the beater by moving the bottom forward a few inches before starting

the machine, and so drawing the load away from the beater. There is evidence to the effect that the complainant sells more manure spreaders without this additional feature than with it.

The complainant contends that the combination of this tailboard and actuating mechanism with a manure spreader, especially of the Kemp type, is new, useful, and involved invention; that the prior art fails to disclose any like combination; and that the broad claims of the patent which are relied on should receive a liberal construction.

On the other hand, the defendant contends that the claims in issue are void for want of patentable novelty, and that, if held to be valid, they must be limited to the specific tailboard arrangement and mechanism described in the patent. The defendant's brief states these defenses as follows:

"First, that the claims in issue relate only to the addition of mechanism regulating the raising and lowering of an ordinary tailboard in a particular way in a manure spreader, and are void for lack of invention in view of the prior art and on their faces, particularly if the claims are given the broad construction for which the complainant contends; and

"Second, that the defendant does not infringe the claims in issue, but, on the contrary, is making and selling manure spreaders covered by its own letters patent, which resemble the art prior to the patent in suit more nearly than they resemble the complainant's patent."

Upon full consideration I am not prepared to hold that these claims of the Kemp patent are void for want of invention. In my opinion, therefore, the important question in this case is whether these claims can be properly construed to cover the defendant's tailboard, in view of the nature and scope of the Kemp invention, and the differences which exist between the two boards as to structure, mode of operation, and means for raising the board.

This question may be considered under four heads: (I) the Kemp patent in suit; (II) the defendant's tailboard; (III) the prior art; (IV) the alleged infringement of the claims in issue.

I. The specification of the Kemp patent in suit begins by stating the general features of a manure spreader. It then states the "customary way" of preventing the material from becoming embedded in the beater, and then follows a statement of the invention:

"This invention relates to that class of manure spreaders which contain a box mounted on a wheeled frame, and in which the body or charge of manure or other fertilizer rests upon a movable bottom, by which the manure is slowly moved rearwardly in the box against a toothed beater, which removes the manure from the rear end of the body or pile and throws it rearwardly from the machine.

"In loading the box with a charge of manure or fertilizing matter, the latter is loaded directly against the beater, whereby the teeth of the latter become so embedded in the material that breakage is liable to occur when the machine is started. In order to avoid such breakage, it is customary to adjust the movable bottom for loading with its follower board a few inches rearward of its extreme forward position, and to move the bottom forward to its extreme forward position after loading and before starting the machine. This forward movement of the bottom moves the rear end of the pile away from the beater and furnishes sufficient clearance for the beater to start freely. This clearing of the beater before starting is, however, often overlooked or neglected, in which case breakage is liable to result.

"The principal object of my invention is to provide the machine with efficient and convenient means for preventing the beater from becoming clogged

in loading, and this means consists, briefly stated, of a safety board or gate which is arranged in the rear portion of the box in front of the beater, and which is lowered into the box before loading, and protects the beater while loading, and is raised out of the box before starting the machine."

This extract from the patent clearly points out the purpose and scope of the invention: In the prior Kemp manure spreader the customary way of avoiding a breakage, owing to the material becoming embedded in the beater, was to adjust the movable bottom with its following board, so that the bottom could be moved forward a short distance after loading. By this forward movement the rear end of the load is moved away from the beater, and sufficient clearance is furnished for the beater to start freely. Since, however, the driver might neglect to clear the beater in this way, Kemp conceived the idea of a "safety board or gate which is arranged in the rear portion of the box in front of the beater, and which is lowered into the box before loading, and protects the beater while loading, and is raised out of the box before starting the machine."

This conception of Kemp involved three simple elements:

First, a tailboard located directly in front of the beater;

Second, means for raising and lowering the board;

Third, means for preventing the starting of the machine before the board is raised.

We will consider these elements in their order:

1. The Kemp board is an ordinary rectangular board, provided on its rear side with two small cleats or ribs, which help to hold it in position. It is lowered into the box before loading, and is raised vertically and bodily out of the box before starting the machine. It does not co-operate in any way with the spreading operation. It performs simply the function of the ordinary tailboard in a farmer's cart or wagon, which confines the manure in the wagon while loading and in transportation to the field, and is raised bodily out of the way just before the unloading begins.

2. The main feature of the mechanism for raising and lowering the board, as shown in the above cut, comprises long side levers, which are pivoted near their front ends to the sides of the wagon, so as to swing up and down. The depression of the front ends of the levers raises the rear ends, and with them the attached board; and when the pressure on the front ends is released the board descends by gravity, carrying down the rear ends of the levers, and raising the front ends.

The means of attaching the board to the levers, as seen in the cut, comprise short arms which extend outwardly from the board and then downwardly, and which are pivotally connected with the ends of the levers.

The mechanism for depressing the levers, and thereby raising the board, comprises cam arms, which are operated when the driver raises a hand lever. These cam arms are secured to the end of a rock shaft arranged above the front portion of the box and above the front ends of the levers. Each of the side levers is provided at its front end with a shoe, and with upward projecting side flanges by which the displacement of the parts is prevented. The cam arms are provided

with a curved lifting face and a straight locking face. The patent says:

"As the cam levers are swung down their curved faces press down upon the shoes of the side levers and depress the same, while the straight locking faces bear against the shoes when the front ends of the levers have been sufficiently depressed and lock the levers in this position."

3. The device for preventing the machine from starting before the board is raised is a transverse pin on the board hand lever near its front end, which projects laterally over the clutch hand lever and prevents the latter from being raised. This stop device is described in the patent as follows:

"When the hand lever, P, is in its lower position, in which the bottom and beater clutches are disengaged and the hand lever, T, stands also in its lower position, in which the board stands in front of the beater, the front end of the board hand lever, T, stands slightly above the clutch hand lever, P, as shown in Fig. 1. The board hand lever, T, is provided near its front end with a transverse pin or stop, t, which projects laterally over the clutch hand lever. P, and prevents the latter from being raised. This prevents the clutches from being engaged, and the bottom and beater from being started, so long as the board is down, and compels the operator to raise the board before starting the bottom and beater."

The claims in issue read as follows:

"1. In a manure spreader, the combination, with the box having a movable bottom and the rotary beater arranged over the rear portion of said bottom, of a safety board or gate arranged over said bottom adjacent to the front side of said beater and capable of vertical movement bodily toward and from said bottom, and mechanism whereby said board can be raised to expose the front side of the beater and lowered to cover the same, substantially as set forth.

"2. In a manure spreader, the combination, with the box having a movable bottom and the rotary beater arranged over the rear portion of said bottom, of a safety board or gate arranged over said bottom adjacent to the front side of said beater and capable of vertical movement bodily toward and from said bottom, side levers pivoted to the sides of the box to swing vertically and connected at their rear ends to said board or gate, and means whereby the front ends of said levers are depressed to raise said board or gate, substantially as set forth.

"3. The combination, with the box having a movable bottom and the beater, of a vertically movable safety board or gate arranged adjacent to the beater, side levers connected at their rear ends with said board or gate, and rocking cam arms bearing upon the front ends of said side levers, substantially as set forth."

"5. The combination, with the box having a movable bottom, the beater, and the bottom-actuating mechanism, of a movable safety board or gate arranged adjacent to the beater, and a stop device which prevents the bottom-actuating mechanism from being thrown into gear before the safety board or gate has been raised, substantially as set forth.

"6. The combination, with the box having a movable bottom, the beater, and the beater-actuating mechanism, of a movable safety board or gate arranged adjacent to the beater, and a stop device which prevents the beater-actuating mechanism from being thrown into gear before the safety board or gate has been raised, substantially as set forth.

"7. The combination, with the box having a movable bottom, the beater, the bottom-actuating mechanism and its clutch, and the shifting mechanism whereby said clutch is engaged or disengaged, of a vertically movable safety board or gate arranged adjacent to the beater, mechanism whereby said board or gate can be raised or lowered, and a stop device which prevents said clutch from being engaged before the safety board or gate has been raised, substantially as set forth.

"8. The combination, with the box having a movable bottom, the beater, the bottom-actuating mechanism and its clutch, the beater-actuating mechanism and its clutch, and the shifting mechanism whereby said clutches are simultaneously engaged or disengaged, of a vertically movable safety board or gate arranged adjacent to the beater, mechanism whereby said board or gate can be raised or lowered, and a stop device which prevents the clutches from being engaged before the safety board or gate has been raised, substantially as set forth."

The important elements in these claims are:

First. A safety board arranged over the bottom of the wagon adjacent to the front side of the beater and "capable of vertical movement bodily toward and from said bottom."

Second. Mechanism in whole or in part for raising and lowering the board.

Third. A "stop device," which prevents the bottom and beater from being thrown into operation before the board has been raised.

It may be observed that the first two claims are limited to a safety board having a vertical bodily movement. This limitation was the result of proceedings in the Patent Office, in which the original claims, which did not contain any such limitation, were rejected on reference to the prior Crandall and McDonald patents.

From this review of the Kemp patent it is clear that the only invention covered by the claims in issue resides in the means described in the specification and shown in the drawings for raising and lowering the tailboard and in the stop device which prevents the starting of the machine before the tailboard is raised.

II. The defendant was a licensee under the earlier Kemp patents, and made and sold Kemp manure spreaders under its license until the expiration of the patents.

The spreader now made by the defendant is covered by two patents, Nos. 731,539 and 821,779, granted to Theophilus Brown for improvements in manure spreaders. These patents are of later date than the patent in suit, and they cover an improved form of tailboard.

We will now consider this tailboard under three heads: (1) Structure and operation; (2) means for raising and lowering the board; and (3) means for preventing the machine from starting before the board is raised.

1. The defendant's board is composed of two rectangular pieces, an upper and a lower, hinged together horizontally. It is arranged in front of the beater, but at some little distance from it. In other words, it is not placed directly against the beater, as in the Kemp arrangement. This board has two curved movements when it is raised. The upper section has a curved movement towards the front of the wagon through an arc of about 120 degrees, while the lower section has a curved movement towards the beater. Neither section, in my opinion, has a vertical movement in the sense of the Kemp tailboard. Again, the lower section of the defendant's tailboard co-operates in the spreading operation. Its purpose is to level and to pulverize the manure as it passes to the beater. The defendant's tailboard, therefore, has two functions: (1) To hold back the manure in loading, and (2) to assist in a better distribution in spreading.

Both sections of the defendant's board are held and guided during their whole movement, while the Kemp board is free to swing on its pivot.

2. The means for raising the defendant's board are as follows: There are short arms, which are rigidly attached to the top of the board. These arms extend towards the front of the wagon, and·are then bent so as to rest in bearings on the top of the wagon side, and to form the axis about which the board rotates. This axis is again bent so as to form a short crank arm, which stands in an upright position when the board is lowered. A long rod is attached to each crank arm, which extends to the front of the wagon. When these rods are drawn forward the crank arm is drawn forward and downward, thereby turning the position of the arm attached to the upper section of the board, so that this section is turned from a vertical position to one which is nearly horizontal. The rods are attached to a rock shaft in front, which is reached by means of a lever near the driver's seat, thereby raising or lowering the board. A goosenecked arm is attached to each side of the lower section of the board near its center. The other end of this arm is pivotally attached to the inside of the wagon near the top. By this arrangement the lower section of the board is moved backward as the upper section is raised. In other words, the lower section must conform its movements to the turning radius of the goosenecked arm, as well as to the turning radius of the upper section.

3. The defendant's board has no stop device within the meaning of the Kemp patent. There is no projecting pin on the board lever which stops the operation of the bottom and beater mechanism before the board has been raised. In the defendant's organization there is but one lever, and the upward movement of this lever raises the tailboard, and starts the bottom and beater. Under the arrangement of crank arms with lugs on defendant's rock shaft, it is probably true that the tailboard begins to rise before the bottom and beater start. It may also be true that the worm and gear are so organized in the bottom mechanism that there is a slight further delay in starting the bottom. Conceding this to be so, the most that can be said is that the starting of the bottom and beater is delayed until after the board has begun to rise. If, however, we should go further, and assume that the board is entirely raised before the movements of the bottom and beater begin, we should still have an organization which is essentially different from the Kemp stop device.

III. The prior art may be said to start with that which is a matter of common knowledge, namely, the old tailboard in the farmer's cart. This board, as we have already said, was used for the purpose of confining the manure in the wagon box while loading and transporting to the field. It was lowered into the wagon box before loading, and raised bodily out of the wagon box before unloading. In structure, function, and use the Kemp board does not differ in any material respect from the ordinary tailboard of the farmer's cart.

Again, the evidence shows it was not uncommon in the earlier Kemp machine to use a hand tailboard similar to that described in the Kemp patent in suit for the purpose of holding back the manure in the wagon

box until just before the spreading operation. The only difference between this earlier Kemp machine so equipped and the machine of the patent in suit is the absence in the former machine of the special means for raising and lowering the board and the stop device for preventing the machine from starting before the board has been raised.

Further, all the prior patents for manure spreaders upon which the defendant relies describe tailboards. Some of these boards were operated by a lever near the driver's seat, and were so organized that the board was released or raised before the bottom and beater were started.

In the McDonald 1875 patent for a manure spreader there is disclosed a tailboard located at the end of the wagon in front of the beater, and which is operated by a lever in front of the wagon. This board is pivoted to the sides of the wagon, and swings on its pivots. A latch at one side is provided, which holds the board in a vertical position. To this latch is attached a long rod, which is connected with the lever in front of the machine. By moving the lever the driver releases the latch, and at the same time sets in operation the movable bottom and the beater. The movement of the manure causes the board to swing upward on its pivot. In the McDonald organization the bottom and the beater cannot start until the board is released and made free to swing on its pivots.

The Crandall 1884 patent for a manure spreader also shows a tailboard which is operated from the front of the wagon. This board is pivoted at its upper edge, and in operation it swings on its pivots. Means are also provided for adjusting this board, so that the opening will only permit the desired quantity of manure to pass. This board not only operates as a tailboard, but co-operates with the spreading operation.

The Merrill 1891 patent for a manure spreader discloses a tailboard in front of the beater. This board is pivoted so as to turn on arms which have a short radius. It is forced bodily upward by the pressure of the manure against it. This board also co-operates with the spreading operation, having the function of packing the manure on its way to the beater. Mechanism for raising the board is not shown in the specification or drawings. The specification says:

"The simplest form is a board or plank set vertically edgewise and somewhat inclined with its bottom rearward or toward the beater, as illustrated in Fig. 1 of the drawings. It is to be arranged movable vertically to allow the manure to pass onto the beater after the manure has been packed to the proper degree, and, if desired, it may be arranged to be moved at will by the person in charge of the machine; but I prefer to arrange it to move automatically."

The Wetter 1895 British patent for a manure spreader shows a tailboard. This board is arranged over the bottom adjacent to the front side of the beater, and one of its objects is to protect the beater in loading. The specification says:

"The lowering of the guard plate prevents the manure from entering the roller, L, when the receptacle is being filled."

To this board are attached side arms, which are pivoted to the same axis as the beater. A hand lever extends from this board backwards,

by which the board may be raised to expose the front side of the beater or lowered to cover it. This board is curved like the segment of a circle concentric with the beater. The Wetter board moves up and down bodily in a curved line.

These prior patents are important as showing that it was common to employ a tailboard in a manure spreader and to provide mechanism for operating the board from the front of the wagon and also to guard against the starting of the machine before the board was released.

We do not find, however, in the prior art, any tailboard and actuating mechanism like that covered by the Kemp patent in suit; nor do we find in the prior art any tailboard and actuating mechanism similar to the defendant's.

Since the mechanical problem of raising or releasing a tailboard from the front of the wagon and of so arranging the parts that the board must be raised or released before the machine starts is not a difficult problem, and since, before the date of the Kemp invention this problem had already been solved in different ways, the most that Kemp can cover by his patent is the particular arrangement or means he has devised for accomplishing this result. The nature of the problem and the condition of the art is such that he is not entitled to a broad patent.

The range of equivalents depends upon the nature and extent of the invention (Miller v. Eagle Company, 151 U. S. 186, 209, 14 Sup. Ct. 310, 38 L. Ed. 121), and where the invention, as in the present case, is a narrow one, it cannot be enlarged by a liberal application of the doctrine of equivalents.

IV. With respect to the infringement of claim 1, the special features which call for consideration are a safety board—

"capable of vertical movement bodily toward and from said bottom, and mechanism whereby said board can be raised to expose the front side of the beater and lowered to cover the same, substantially as set forth."

This claim is limited to a board capable of vertical movement. The defendant's board, as we have seen, has a compound curved movement. The movements, therefore, of the two boards are substantially different; and these movements cannot be considered the equivalent of each other, in view of the nature and scope of the Kemp invention. It is also important in this connection to bear in mind that this claim was rejected by the Patent Office until it was limited to a board having a vertical movement. Again, the term "mechanism" in this claim cannot properly be construed to cover every form of mechanism for raising and lowering the board, but must be limited to substantially the special arrangement and means described in the specification and shown in the drawings. It was these special means which Kemp invented, and this invention cannot be enlarged by framing a broad claim. Either this claim should be held void by reason of its breadth, or it must be construed in connection with the specification, and so limited to the particular way devised for accomplishing the desired object. For these reasons the defendant's board does not infringe this claim.

As to the infringement of claim 2, the special features are a safety board—

"capable of vertical movement bodily toward and from said bottom, side levers pivoted to the sides of the box to swing vertically and connected at their rear ends to said board or gate, and means whereby the front ends of said levers are depressed to raise said board or gate, substantially as set forth."

This claim is not infringed, for the reason that the defendant's board does not have a "vertical bodily movement" within the meaning of the Kemp patent, and for the further reason that in the defendant's organization there are not found the "side levers" and the "means for depressing the front ends of the levers" which constitute the special arrangement of the Kemp invention.

As to the infringement of claim 3, the special features are:

"A vertically movable safety board or gate arranged adjacent to the beater, side levers connected at their rear ends with said board or gate, and rocking cam arms bearing upon the front ends of said side levers, substantially as set forth."

Claim 3 is not infringed, for the reasons just stated with respect to claim 2.

As to the infringement of claims 5, 6, 7, and 8, the special feature in all these claims is " a stop device," which prevents the bottom and beater from being actuated before the board is raised. There is no stop device in the defendant's board in the sense of the Kemp patent, and therefore these claims are not infringed.

In conclusion, it may be observed that this is not a case in which the defendant has sought to evade infringement by constructing a board like the Kemp board with simple changes in details. Nor has the defendant taken the substance of the Kemp organization and sought to improve upon it. On the contrary, the defendant's board, in my opinion, is different in structure, mode of operation, and in the results secured.

The complainant having failed to make out a case of infringement, it follows that the bill must be dismissed.

A decree may be entered dismissing the bill, with costs.